UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CIV-22990-ALTONAGA

SAMUEL LEE SMITH, JR.,

      Plaintiff,

v.

MARK SLIMAK, et al.,

      Defendants.

_____/

## DEFENDANTS' JOINT MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendants, Mark Slimak and Miami-Dade County,[1] pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move to dismiss the Second Amended Complaint against them.[2]

### I.      FACTS

On December 14, 2023, Plaintiff was jogging in the County when Miami-Dade police officer Mark Slimak almost hit him. [ECF No. 26 at ¶ 14]. Off. Slimak then yelled at Plaintiff, commanded him to stand on the sidewalk, and threatened him with arrest before leaving. *Id.* at ¶¶ 14, 15.

On December 31, 2021, Plaintiff exited a store and encountered Off. Slimak who demanded he identify himself. *Id.* at ¶ 16. Plaintiff refused to answer Off. Slimak, who put him in handcuffs and threatened to take him to jail. *Id.* Plaintiff alleges that Off. Slimak didn't let Plaintiff leave the scene, but also admits he stayed on scene to wait for a sergeant to arrive. *Id.* at ¶¶ 17-18.

---

[1] Plaintiff initially named the Miami-Dade Police Department only, but in an Order dated November 1, 2024, the Court construed, "all references to the 'Miami-Dade Police Department' in the Second Amended Complaint as references to 'Miami-Dade County.'" [ECF No. 27].

[2] Plaintiff has filed at least four other lawsuits against Miami-Dade officers or entities in the last year. *See Smith v. Miami-Dade Corrections and Rehabilitation*, Case No. 24-CV-21842-JB, *Smith v. Perkins*, Case No. 24-CV-21548-MD, *Smith v. Miami-Dade County*, Case No. 24-CV-23957-CMA, and *Smith v. Miami-Dade County*, Case No. 24-CV-21845-RAR.

On some unidentified date, Off. Slimak encountered Plaintiff in a shopping plaza and stared at him "in a menacing and threatening manner." *Id.* at ¶ 19. Plaintiff alleges that Off. Slimak never had "any cause, suspicion, or justification to commit such conduct against [Plaintiff.]" *Id.* at ¶ 21. Plaintiff claims that he told the Miami-Dade Police Department about Off. Slimak, but MDPD took no action. *Id.* at ¶ 23.

From this set of facts, Plaintiff alleges three claims against Off. Slimak (Count I for false arrest in violation of § 1983, Count II for excessive force in violation of § 1983, and Count III for intentional infliction of emotional distress) and two claims against the County (Count IV for violation of civil rights and Count VI for respondeat superior).[3]

## II.   MEMORANDUM OF LAW

### A.  Standard of Review

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must state a claim for relief that is plausible, not merely possible." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (en banc). A claim is "plausible" if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court accepts well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff, conclusory allegations and legal conclusions do not receive that deference. *Bishop v. Ross Earle & Bonan*, P.A., 817 F.3d 1268, 1270 (11th Cir. 2016); *Turner v. Wells*, 198 F. Supp. 3d 1355, 1364 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.* In applying the Supreme Court's

---

[3] There is no Count V in the SAC. Defendants refers to the counts by their titles in the SAC.

directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted).

To survive dismissal, then, Plaintiff must allege facts that "nudge[s] [his] claims across the line from conceivable to plausible." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1296 (11th Cir. 2010) (cleaned up). Plaintiff cannot achieve this by relying on conclusory allegations, and therefore the Court should disregard such allegations in considering Defendants' motion to dismiss. *Id.* at 1293.

B. **The Claims Against Officer Slimak Should be Dismissed Because the Officer is Entitled to Qualified and Official Immunity Based on the Facts Alleged in the Second Amended Complaint**

   **1.    There is no constitutional violation**

Section 1983 clearly requires a violation of rights, privileges, or immunities secured by the Constitution and law as a prerequisite to filing suit for damages. Therefore, in first analyzing a claim under Section 1983, it must first be determined, Has the plaintiff stated a claim?  In *Siegert v. Gilley*, the Supreme Court explained:

> A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted *is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.*

111 S.Ct. 1789, 1793 (1991) (emphasis added).

"Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights." *Almand v. DeKalb Cnty., Ga.*, 103 F.3d 1510, 1512 (11th

3

Cir. 1997). Section 1983 is not meant to replace state tort law, it is only meant to provide a remedy for violations of federally protected rights. *Id.* at 1513 (citing *Baker v. McCollan,* 443 U.S. 137, 145-46, 99 S. Ct. 2689, 2695 (1979)). A successful 42 U.S.C. § 1983 action requires that the plaintiff "show [that he or] she was deprived of a federal right by a person acting under color of state law." *Id.*

A federal deprivation of rights to enable a plaintiff to sue for damages based on Section 1983, can be based on a violation of either procedural or substantive due process. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994)(en banc). Substantive due process protects against "government interference with certain fundamental rights and liberty interests." *Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1235 (11th Cir. 2004). Because substantive due process rights are created only by the U.S. Constitution, rights created by state law are not entitled to this protection. *McKinney*, 20 F.3d at 1556.

In this case, the Plaintiff must allege that Mark Slimak intentionally committed acts that violated his constitutional right not to be subjected to excessive or unreasonable force either during an arrest or while being held in custody as a pretrial detainee.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons. against unreasonable searches and seizures, shall not be violated . . . ." U.S. Constitution. Fourth Amendment jurisprudence long has identified three categories of encounters between citizens and police: (1) "police-citizen communications involving no coercion or detention"; (2) "brief seizures or investigative detentions"; and (3) "full-scale arrests." *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989).

The first category of encounters, involving no coercion or detention, does not implicate the Fourth Amendment. *Id.* The second category includes temporary detentions, which are permissible where an officer has a "reasonable, articulable suspicion that criminal activity is afoot," *Illinois v. Wardlow*, 528 U.S. 119, 123, 120, S. Ct. 673, 675 (2000), or where an exception to general Fourth Amendment principles exists, *see, e.g., Michigan v. Summers*, 452 U.S. 692, 705, 101 S. Ct. 2587, 2595

4

(detention of individuals present at a residence during the execution of a search warrant). The third category consists of full arrests, which must be supported by probable cause and includes arrests arising out of seizures that began as temporary detentions. See *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82, 95 S. Ct. 2574, 2580 (1975).

### 2.  Mark Slimak is entitled to the protections of qualified immunity

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 742, 122 S. Ct. 2508, 2516 (2002). Qualified immunity applies to a defendant who establishes that he was a government official "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

The "threshold inquiry" in determining whether qualified immunity is appropriate is "whether plaintiff's allegations, if true, establish a constitutional violation." *Pelzer,* 536 U.S. at 736, 122 S. Ct. at 2513. *If the plaintiff's allegations, taken as true, fail to establish a constitutional violation, qualified immunity attaches and the district court should dismiss the complaint. Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001). (emphasis added).

Even if the plaintiff alleges facts that would establish a violation of a constitutional right, qualified immunity will shield the defendant from suit unless the right was "clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). "The relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009).

In the present case, there was a seizure on December 31, 2021, when Plaintiff was detained during an investigatory inquiry because he was in police "restraint and he had no opportunity to walk away while he was in handcuffs. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 595, 109 S. Ct. 1378, 103 L.Ed. 2d 628 (1989) (quoting *Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Nonetheless, there are no allegations that the detainment was extended or unreasonably long. In actuality, Plaintiff requested a sergeant and remained on the scene for the sergeant to appear and then was immediately told he was free to leave.

This Court "need not employ a rigid two-step procedure, but rather may exercise [our] discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Gilmore v. Hodges*, 738 F.3d 266, 273 (11th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009)).

A federal right is "clearly established" when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 823 (11th Cir.1997) (en banc) ("For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law."). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis added); *see also City & County of San Francisco, Ca. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015); *Plumhoff v.*

*Rickard*, 134 S. Ct. 2012, 2023 (2014); *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084. (2011).

The *Sheehan* case went on to say, "so long as a reasonable officer could have believed that his conduct was justified," a plaintiff cannot succeed "by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless." 135 S. Ct. at 1777.

It is undeniable that the plaintiff's encounter with Off. Slimak on December 14, 2023 and the "stare-down" in the shopping plaza on an unknown date and time cannot be a Fourth Amendment violation since there was no excessive detention, no arrest, and no injuries, thus no constitutional violation occurred.

### 3. Damages are either non-existent or *de minimus*

(a) Compensatory damages:

"[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986); *accord Wright v. Sheppard*, 919 F.2d 665, 669 (11th Cir. 1990). Damages may include monetary losses, such as lost wages, damaged property, and future medical expenses. *Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000)). Damages also may be awarded based on "physical pain and suffering" and " demonstrated . . .impairment of reputation[] and "personal humiliation." *Slicker*, 215 F.3d at 1231.

"[C]ompensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated." *Slicker*, 215 F.3d at 1229. Consequently, when a plaintiff does not provide any "proof of a specific, actual injury caused by" the defendant's conduct,

7

the plaintiff is not entitled to compensatory damages. *Kelly v. Curtis*, 21 F.3d 1544, 1557 (11th Cir.1994)

(b) *De minimus* damages:

First, if a constitutional right would have been violated under the plaintiff's version of the facts, he must also show that the constitutional right was clearly established at the time, meaning that a reasonable person should have known that the conduct violated that right. Second, in an excessive-force case, it must then be determine whether the amount of force was proper, i.e. whether a reasonable officer at the scene would have believed that the level of force used was necessary in the situation. *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008) (*per curiam*).

Use of only de minimis force does not violate the Fourth Amendment, as long as the arrest or detention was otherwise lawful. *Zivojinovich*, 525 F.3d at 1072. Thus, "a minimal amount of force and injury . . . will not defeat an officer's qualified immunity." *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000). The Eleventh Circuit has repeatedly held that a push or shove that causes pain and necessitates no or merely minor medical treatment is not a violation of the Fourth Amendment, even where the arrestee was handcuffed and no further force was necessary. *See, e.g., Jones v. City of Dothan,* 121 F.3d 1456, 1460-61 (11th Cir. 1997) (*per curiam*); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994).

*McCall v. Crosthwait*, No. 09-10443 (11th Cir. 7/2/2009), No. 09-10443. (11th Cir. Jul 02, 2009).

> In the case before this Court, Plaintiff has sued Off. Slimak, alleging:
>
> 14. On December14, 2023, while Mr. Smith was jogging in Miami Dade County, Florida, SLIMAK almost hit him with his police vehicle. SLIM AK then became aggressive and yelled at Mr. Smith without any reason or cause.
>
> 15. SLIMAK exited his vehicle and, without cause, commanded Mr. Smith to stand on the sidewalk. SLIMAK threatened to arrest Mr. Smith without any reason to do so. After terrorizing Mr. Smith, SLIMAK left the area.
>
> 16. On December 31, 2021, while Mr. Smith was exiting a store in Miami Dade County, Florida, SLIMAK approached Mr. Smith for no reason, and demanded he

identify himself. When Mr. Smith asked why he was stopped and would not provide any information until he was told why he was stopped, SLIMAK forcefully detained M r. Smith and placed in him in handcuffs and threatened to place him in jail.

17. At that point out of fear, Mr. Smith provided SLIMAK with his name. SLIMAK then would not permit Mr. Smith to leave despite having done nothing wrong.

18. Mr. Smith requested a sergeant to come to the scene, and asked for a case number or incident number but the supervisor stated they do not write case numbers for that, they only write case numbers for crimes, and since he did not commit a crime, there would be no case or incident number.

19. In yet another incident, Mr. Smith was in a car in shopping plaza in Miami Dade County, Florida and SLIMAK was nearby. As Mr. Smith was exiting his car, SLIMAK started at him in a menacing and threatening manner so as to intimidate Mr. Smith as Mr. Smith entered a store.

[ECF No. 26-3]. The sole claim for any physical injuries was the handcuffing, to which Plaintiff makes no allegations of any physical injuries as a result of that incident.

Plaintiff does not allege any other excessive force used by Off. Slimak nor any unlawful and/or physical contact by Off. Slimak for which Plaintiff is seeking compensation.

### 4. Mark Slimak is entitled to the protections of Florida Statutes Section 768.28(9)(a)

In an abundance of caution, Off. Slimak seeks a dismissal of Count III of the SAC if the Court interprets the cause of action as one pertaining to a state tort.

Florida Statutes Section 768.28(9)(a) states, in pertinent part:

No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property

The question of whether an officer acted with disregard for human rights may be answered summarily as a question of law, or decided by a trier of fact, depending on the facts presented. *See McGhee v. Volusia Cty.*, 679 So. 2d 729, 733 n.7 (Fla. 1996) (holding that "the question must be put to the fact-finder whether [a sheriff's deputy] acted in bad faith, with malicious purpose, or in a manner

9

exhibiting wanton or willful disregard of human rights, safety, or property" but noting "that this holding is based on the questions presented by the facts at hand. There may be cases in which summary dismissal would be proper based on different facts").

The purpose of the protections granted to state actors in Section 768.28(9) is to "immunize public employees from liability for ordinary negligence, while providing injured claimants a remedy against governmental entities though the waiver of sovereign immunity. This ... promote[s] vigorous performance of duties by government employees, free from the fear of negligence actions, while at the same time providing redress through governmental assumption of liability to persons injured by the ordinary negligence of government employees." *Rupp v. Bryant*, 417 So. 2d 658, 671 (Fla. 1982) (Boyd, J., dissenting). Granting public employees these protections serves the public interest by allowing those employees to act with independence and without fear of consequences. *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S. Ct. 2727 (1982). Those consequences include both liability for money damages, and "the general cost of subjecting officials to the risks of trial, distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Id.* at 816. Even pretrial matters, such as discovery, are to be avoided, if possible, as "[i]nquiries of this kind can be peculiarly disruptive of effective government." *Id.* at 817.

*Harlow* recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains could reasonably be said to fall outside the parameters of the employee's qualified immunity (or in this case immunity based on Section 768.28(9)(a)). The entitlement is an immunity from suit rather than a mere defense to liability; and like absolute immunity, is effectively lost if a case is erroneously permitted to go forward. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985). Adopting that reasoning, Section 768.28(9)(a) offers protections both from suit and liability, except in limited circumstances.

In *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006) the Court noted that, "the immunity provided by section 768.28(9)(a) is both an immunity from liability and an immunity from suit, and the benefit of this immunity is effectively lost if the person entitled to assert it is required to go to trial." The Fifth DCA further went on to observe that "the trial judge must act as a gatekeeper in these circumstances, and should terminate civil proceedings when the immunity applies."

**5. There are insufficient facts to establish a cause of action for intentional infliction of emotional distress**

In Florida, the elements of intentional infliction of emotional distress are:

(1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;

(2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;

(3) the conduct caused emotion[al] distress; and

(4) the emotional distress was severe.

*LeGrande v. Emmanuel*, 889 So. 2d 991, 994-95 (Fla. 3d DCA 2004) (quoting *Clemente v. Horne*, 707 So. 2d 865, 866 (Fla. 3d DCA 1998)). *The Restatement of Torts* defines the type of outrageous conduct needed to support the second element of the tort: It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. What constitutes outrageous conduct is a question that must be decided as a matter of law. *De La Campa v. Grifols Am., Inc.*, 819 So. 2d 940, 943 (Fla. 3d DCA 2002) ("What constitutes outrageous conduct is a question for the trial court to determine as a matter of law.") The plaintiff's "subjective response" to the conduct "does

not control the question of whether the tort of intentional infliction of emotional distress occurred." *Liberty Mut. Ins. Co. v. Steadman* , 968 So.2d 592, 595 (Fla. 2d DCA 2007).

For one's actions to rise to the level of intentional infliction of emotional distress, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Clemente v. Horne* , 707 So.2d 865, 867 (Fla. 3d DCA 1998) (quotation omitted). It is not "enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Gallogly v. Rodriguez* , 970 So.2d 470, 471–72 (Fla. 2d DCA 2007) (quotation omitted). In other words, even purposeful conduct that one knows is going to hurt another is not outrageous enough to support a claim. *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949 (Fla. 3d DCA. 2017). The conduct alleged against Off. Slimak comes nowhere near to satisfying this high standard.

C. **What is Alleged Against the County Fails to Conjure a Violation of Either Federal or State Law and Therefore the Court Should Dismiss Counts IV and VI Against It**

In Count IV of the SAC, labeled "Federal Civil Rights Violations," Plaintiff alleges that the County violated Plaintiff's "civil and constitutional rights as more fully set forth above." [ECF No. 26 at ¶ 40]. He goes on to say that the County hasn't disciplined Off. Slimak," *see id.* at ¶ 41, and that the County has "*de facto* policies, practices, and/or customs" related to Plaintiff's alleged grievances. *Id.* at ¶¶ 43, 44, 46, 47, 48. In Count VI, Plaintiff frames a claim for "respondeat superior" against the County, alleging that the County "is responsible for the acts of SLIMAK that were performed in the course and scope of his employment." *Id.* at ¶ 54. Both counts should be dismissed as they fail to plead facts sufficient to state a cognizable claim under either state or federal law against the County.

The only non-conclusory factual allegations state that Off. Slimak detained Plaintiff at various points. It is because of these encounters that Plaintiff seeks relief from the County for

alleged deprivations of his constitutions rights. But this approach—which seeks to hold the County vicariously liable for the acts of its employee—is expressly prohibited.

It is black letter law that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983."); *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir.  2003) (en banc) ("A county's liability under § 1983 may not be based on the doctrine of respondeat superior."); *Baxter v. Roberts*, 54 F.4th 1241, 1270 (11th Cir. 2022). Rather, a county may be held liable under § 1983 only if the plaintiff's injury was inflicted pursuant to an "official policy" of the county.  *Monell*, 436 U.S. at 694; *Grech*,  335 F.3d at 1329; *Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003) ("[T]o subject a county to liability under section 1983 [a] plaintiff must show that the [claimed] constitutional violation occurred as a result of county policy."); *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1540 (11th Cir. 1994) ("Counties may be liable for violations of constitutional rights only when such violations occur as a result of an official county policy.").

This is the quintessential case of liability resting upon a theory of *respondeat superior* because Plaintiff seeks to hold the County responsible for constitutional violations allegedly committed by an individual police officer. The Court should dismiss the § 1983 claim against the County for this reason. *See Fernandez v. The Sch. Bd. of Miami-Dade Cnty.*, No. 15-21915-CIV, 2015 WL 9474616, at *4 (S.D. Fla. Dec. 29, 2015) (dismissing complaint and noting that the allegations "read as an attempt to hold the School Board liable for the actions of District employees and officials," but "this type of respondeat superior liability is specifically proscribed under *Monell*, and the Court will not entertain such claims here."); *Cone v. Orosa*, No. 13-CV-24674- JLK, 2014 WL 1383028, at *2 (S.D. Fla. Apr. 8, 2014); *McCroden v. Cty. of Volusia*, No. 614CV1139ORL18KRS, 2014 WL 12650685, at *3 (M.D. Fla. Sept. 18, 2014); *Bloom v. Miami-Dade*

*Cty.*, 816 F. Supp. 2d 1265, 1281 (S.D. Fla. 2011), *aff'd sub nom. Bloom v. Alvereze*, 498 F. App'x 867 (11th Cir. 2012).

The remainder of Plaintiff's allegations, which intersperse the words "policy" and "practice" throughout, do not advance his case any further. While it is true that a plaintiff can pursue liability when a municipality maintains an unofficial policy of unconstitutional conduct, such claims must establish a "***widespread*** practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (internal quotations omitted) (emphasis added); *Denno v. School Bd. of Volusia County*, 218 F.3d 1267, 1276 (11th Cir. 2000) (for the County "to be held liable under the custom or practice prong . . . [the plaintiff] must demonstrate that a custom or practice of [the alleged conduct] is so well-settled and pervasive that it assumes the force of law."); *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Normally random acts or isolated incidents are insufficient to establish a custom or policy.") (citations omitted). The custom must be "so pervasive as to be the functional equivalent of a formal policy." *Grech*, 335 F.3d at 1330 n.6.

To prove a widespread practice, the plaintiff must introduce facts showing "prior incidents of constitutional violations that occurred ***in the same manner that caused plaintiff's injury***." *Hilliard v. City of Hialeah*, 18-24594-CIV, 2020 WL 554540, at *7 (S.D. Fla. Feb. 4, 2020) (citing *Gold*, 151 F.3d 1346, 1351 (11th Cir. 1998)) (emphasis added). A plaintiff cannot establish a *Monell* claim if he cannot point to prior incidents of unconstitutional conduct involving ***similar facts***. *Connick v. Thompson*, 563 U.S. 51, 63 (2011) (rejecting claim that prior *Brady* violations were sufficient to put the district attorney's office on notice of the need to train because "those incidents [were] not similar to the violation at issue"); *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005); *see also Weiland v.*

14

*Palm Beach County Sheriff,* 792 F.3d 1313, 1329 n.21 (11th Cir. 2015) (affirming the dismissal of *Monell* claim where allegations about prior shootings of the mentally ill that might have given the sheriff's office notice of a constitutionally questionable policy or custom did not include allegations that the shootings had given rise to "similar constitutional violations" as the ones allegedly suffered by the plaintiffs) (citation omitted); *Nix v. Ayers*, No. 16-3435, 2018 WL 3391213, at *1 (M.D. Fla. May 15, 2018) (dismissing *Monell* claim where plaintiff failed to show "a history of prior incidents similar to those at issue here"); *Asia v. City of Miami Gardens*, No. 14-20117, 2016 WL 739656, at *8 (S.D. Fla. Feb. 25, 2016) (same); *Davis v. McCarthy*, No. 15-0138, 2015 WL 5853662, at *9 (S.D. Ala. Aug. 26, 2015) (same).

In the Court, Plaintiff alleges nothing more than his own interactions with Off. Slimak, which is plainly insufficient. Indeed, courts routinely dismiss complaints, like this one, that rely only upon the incident at issue to frame a claim of municipal liability under § 1983. *See, e.g.*, *Carraway v. Perez*, No. 1:17-CV-22929-JLK, 2019 WL 5863918, at *3 (S.D. Fla. Nov. 8, 2019); *Balbin v. Concepcion*, 411 F. Supp. 3d 1340, 1361 (S.D. Fla. 2019); *Lordeus v. Miami-Dade Cty.*, No. 1:17-CV-20726-UU, 2017 WL 2984166, at *3 (S.D. Fla. July 5, 2017); *Est. of Osorio v. Miami-Dade Cnty.*, No. 16-20200-CIV, 2016 WL 9526401, at *3 (S.D. Fla. Oct. 28, 2016) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)); *Sanchez v. Miami-Dade Cnty.*, No. 06-21717-CIV, 2007 WL 1746190, at *3 (S.D. Fla. Mar. 28, 2007); *see also Diaz v. Miami-Dade Cnty.*, 849 F. App'x 787, 792 (11th Cir. 2021) (affirming dismissal of a complaint that did not state a valid claim under *Monell* in relying on the underlying incident only).

In the end, Plaintiff only recites the words "policy" and "practice." Since far more is required, the Court should dismiss the SAC against the County. *Carraway v. Perez*, No. 1:17-CV-22929-JLK, 2019 WL 5863918, at *3 (S.D. Fla. Nov. 8, 2019) (dismissing complaint that "offer[ed] nothing more than labels and conclusions regarding a 'policy' or 'custom,'"); *Andrade v. Miami-Dade Cnty.*, No. 09-

15

23220-CIV, 2011 WL 4345665, at *8 (S.D. Fla. Sept. 16, 2011) ("mere mention of policy, practice, or custom is not enough, for a plaintiff must do something more than simply allege that such an official policy exists.") (internal quotations omitted); *Moore v. Miami-Dade County*, No. 06-22705, 2007 WL 4644629, at * 4 (S.D. Fla. Dec. 10, 2007) (dismissing, with prejudice, the plaintiff's second amended complaint because "plaintiff's conclusory allegations of an unofficial practice [were] simply not enough" to establish municipal liability).

Finally, to the extent Plaintiff seeks to hold the County responsible for acts of "negligence" by Off. Slimak [ECF No. 26 at ¶ 55], that claim fails because only intentional conduct—false arrest and excessive force—is described. His negligence claim is therefore subject to dismissal as well. *Hodges v. Hunter*, No. 3:23-CV-1375-MMH-PDB, 2024 WL 3890007, at *6 (M.D. Fla. Aug. 21, 2024) (dismissing negligence claim against the sheriff's office because the underlying misconduct—battery and false imprisonment—implicated intentional conduct only); *see also Brown v. J.C. Penney Corp.*, 521 F. App'x 922, 924 (11th Cir. 2013) ("A claim for negligence cannot be premised solely on a defendant's alleged commission of an intentional tort") (citing *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. Dist. Ct. App. 1996)).

Dated: December 11, 2024

Respectfully Submitted,

*/s/ Rhea P. Grossman*

Rhea P. Grossman, Esq.
Florida Bar. No. 092640
Counsel for Defendant,
**MARK H. SLIMAK**
2650 West State Road 84, Suite 102
Fort Lauderdale, Florida 33312
Phone:    (954) 587-8488
E-mail:    rheagrossman@comcast.net

---and---

By: /s/ Erica Zaron

Erica S. Zaron, Esq.
Florida Bar No. 0514489
Assistant County Attorney
Telephone:(305) 375-5151
Facsimile: (305) 375-5611
E-mail: zaron@miamidade.gov
*Counsel for Miami-Dade County*

## CERTIFICATE OF SERVICE

**I hereby certify** that on December 11, 2024, a true and correct copy of the foregoing was served via regular mail on Plaintiff, Samuel Smith, Jr., at 16614 SW 99 Court, Miami, Florida 33157, and via email at gymsam7@gmail.com.

s/ Erica Zaron
Erica S. Zaron