UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22990-CIV-ALTONAGA/Reid

**SAMUEL LEE SMITH, JR.**,

    Plaintiff,
v.

**MARK H. SLIMAK**, *et al.*,

    Defendants.
_____/

# ORDER

**THIS CAUSE** came before the Court upon Defendants, Mark H. Slimak and Miami-Dade County's Joint Motion to Dismiss Second Amended Complaint [ECF No. 43], filed on December 11, 2024. *Pro se* Plaintiff, Samuel Lee Smith, Jr. filed a Response [ECF No. 49], to which Defendants filed a Reply [ECF No. 50]. The Court has carefully considered the record, the parties' written submissions, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

## I. BACKGROUND

This action arises from a series of alleged incidents between Plaintiff and Defendant Mark Slimak, a police officer with the Miami-Dade Police Department. (*See generally* Second Am. Compl. ("SAC") [ECF No. 26]).[1] Plaintiff contends the first incident occurred on December 31, 2021, when Slimak approached Plaintiff without reason and asked Plaintiff to identify himself.

---

[1] Despite its label, Plaintiff's "Second Amended Complaint" [ECF No. 26], filed on October 30, 2024, is actually his third amended complaint and the fourth iteration overall. (*See* Compl. for Violation of Civil Rights [ECF No. 1]; Am. Compl. [ECF No. 11]; Am. Compl. [ECF No. 16]). For clarity, and to be consistent with the parties' filings, the Court refers to the operative amended complaint filed on October 30, 2024 as the "SAC."

(*See id.* ¶ 16).  When Plaintiff refused to provide identification, Slimak "forcefully detained" Plaintiff, placed him in handcuffs, threatened to send him to jail, and refused to allow him to leave for an unstated amount of time.  (*Id.* ¶¶ 16–17).

In another incident, Slimak stared[2] at Plaintiff "menacing[ly]" and "threatening[ly]" in a store parking lot, on an unspecified date.  (*Id.* ¶ 19 (alterations added)).  Then, on December 14, 2023, Slimak nearly hit Plaintiff with his car while Plaintiff was out jogging.  (*See id.* ¶ 14).[3]  After this encounter, Slimak threatened to arrest Plaintiff and commanded him to stand on the sidewalk.  (*See id.* ¶ 15).

Plaintiff also generally alleges that Slimak has stalked him and threatened him with arrest, incarceration, and violence.  (*See id.* ¶ 13).  Plaintiff purports to have video and audio recordings of Slimak's behavior but neither specifies what these recordings capture nor provides them with the SAC.  (*See id.* ¶ 20).  He states that the alleged incidents have left him in fear for his life and safety.  (*See id.* ¶ 22).

Plaintiff brings claims against Slimak, in his personal capacity, and against Miami-Dade County.  (*See id.* ¶¶ 9–10, 24–56).  Plaintiff's claims against Slimak are for: (1) unlawful arrest and false imprisonment under 42 U.S.C. section 1983; (2) unnecessary and excessive use of force under section 1983; and (3) intentional infliction of emotional distress, presumably under Florida state law.  (*See id.* ¶¶ 24–38).  He also sues Miami-Dade County, labeling one count "Federal Civil Rights Violations" and titling another "Respondeat Superior[.]"  (*Id.* ¶¶ 39–56 (alteration added)).

---

[2] The Court considers Plaintiff's use of "started" in the SAC a typographical error for the intended word, "stared."  (SAC ¶ 19).

[3] Plaintiff does not indicate whether this near collision was purposeful or accidental.  (*See id.* ¶ 14).

In response, Defendants bring the present Motion, seeking the dismissal of the SAC in full for failure to state claims upon which relief can be granted. (*See generally* Mot.; Reply).

## II.  LEGAL STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant[s]-unlawfully-harmed-me accusation." *Id.* (alterations added; quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* at 678 (alterations added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant[s] acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (alteration added; citation omitted; abrogated on other grounds by *Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012)).

## III.  DISCUSSION

Defendants argue the SAC should be dismissed because (1) Plaintiff's section 1983 claims fail to state that Slimak violated a constitutional right, which is required to overcome Slimak's

3

qualified immunity defense (*see* Mot. 3–7);[4] (2) Slimak is statutorily protected from Plaintiff's intentional-infliction-of-emotional-distress ("IIED") claim under Section 768.28(9)(a), Florida Statutes (*see* Mot. 9–11); (3) Plaintiff's IIED claim also fails to include facts meeting the required elements of the claim (*see id.* 11–12); and, finally, (4) Plaintiff fails to articulate a viable theory of liability against Miami-Dade County (*see id.* 12–16).

In considering the Motion to Dismiss, the Court first addresses the claims against Slimak, personally; and then, the two counts against Miami-Dade County. The Court finds that only Count I against Slimak states a plausible claim for relief. The other four claims are dismissed.

### A. Count I: Unlawful Arrest/False Imprisonment under 42 U.S.C. Section 1983 (Against Slimak)

Plaintiff alleges constitutional violations by Slimak under 42 U.S.C. section 1983 for unlawful arrest and false imprisonment. (*See* SAC ¶¶ 24–28). Defendants argue Plaintiff's claim of unlawful arrest or false imprisonment against Slimak in his personal capacity should be dismissed because Plaintiff fails to allege facts that state a constitutional violation required to overcome Slimak's qualified immunity as a police officer. (*See* Mot. 3–7). The Court disagrees; Plaintiff's allegations, taken as true, show that Slimak violated Plaintiff's clearly established Fourth Amendment right to be free from unreasonable seizure.

Defendants assert that qualified immunity renders Slimak personally immune from suits against him for actions undertaken in his job as a police officer. (*See id.* 5); *see also Fleming v. Barber*, 383 F. App'x 894, 896 (11th Cir. 2010) (noting "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person

---

[4] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

would have known" (alteration added; quotation marks and citation omitted)). Because Defendants raise the qualified immunity defense, the Court "must exercise its discretion in a way that protects the substance of the qualified immunity defense . . . so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings.'" *Id.* (alterations added; quoting *Crawford–El v. Britton*, 523 U.S. 574 (1998); other citation omitted).

"To receive qualified immunity, a public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *De Veloz v. Miami-Dade Cnty.*, 756 F. App'x 869, 876 (11th Cir. 2018) (citation omitted). Plaintiff does not contest that Slimak was acting in his official capacity as a police officer when the alleged conduct occurred. (*See* SAC ¶ 52 ("At all times relevant . . . [Slimak] was an . . . employee of the Miami[-]Dade Police Department . . . and was within the scope of employment when he committed the conduct described [in the SAC]" (alterations added)). As a result, Plaintiff bears the burden of showing that Slimak is not entitled to qualified immunity. *See De Veloz*, 756 F. App'x at 876 (citation omitted).

To show that Slimak is not entitled to qualified immunity, Plaintiff must plead facts that, when taken as true, establish that: (1) Slimak violated Plaintiff's constitutional right(s), and (2) the "right was clearly established at the time of the alleged violation." *Id.* (citation and quotation marks omitted). Plaintiff alleges three specific incidents in the SAC: (1) the December 31, 2021 incident where Slimak "forcefully detained" Plaintiff in handcuffs for an unstated amount of time and threatened to send him to jail (SAC ¶¶ 16–17); (2) the undated instance where Slimak stared at Plaintiff in a menacing and threatening manner while Plaintiff attempted to enter a store (*see id.* ¶ 19); and (3) the December 14, 2023 incident when Slimak commanded Plaintiff to stand on the

sidewalk and threatened to arrest Plaintiff after nearly hitting Plaintiff with his police vehicle (*see id.* ¶¶ 14–15).[5]

Incidents (2) and (3) amount to no more than yelling at and staring at Plaintiff.[6] The Eleventh Circuit has held that mere verbal abuse, including threats, cannot amount to a constitutional violation. *See Oliver*, 2019 WL 1254844, at *4 (quoting *Hernandez*, 281 F. App'x at 866). Therefore, the operative question is whether Plaintiff's allegations concerning the December 31, 2021 incident, taken as true, plausibly show that Slimak violated one or more of Plaintiff's clearly established constitutional rights.

As an initial matter, the Court construes Count I — which is labeled "Unlawful Arrest/ False Imprisonment" — as a claim that Slimak violated Plaintiff's Fourth Amendment right to be free from "unreasonable searches and seizures[.]" U.S. Const. amend. IV (alteration added). The substance of Plaintiff's claim in Count I sounds in unlawful seizure. (*See* SAC ¶¶ 24–28). Plaintiff asserts that a stop occurred during which Slimak temporarily detained Plaintiff in handcuffs. (*See id.* ¶¶ 16–17). Plaintiff also alleges Slimak did not have "reasonable suspicion" to detain him and calls the incident a "detainment[.]" (*Id.* ¶ 25 (alteration added)). The Court, mindful of the need to construe *pro se* filings liberally and empowered to "look beyond the labels used in a *pro se* party's complaint[,]" thus interprets Plaintiff's unlawful arrest claim/false imprisonment claim as

---

[5] Outside of these three specific instances, Plaintiff also broadly asserts that Slimak has stalked him and threatened him with "arrest, incarceration, and [] physical violence since 2021." (SAC ¶ 13 (alteration added)). Plaintiff provides no supporting facts explaining this general allegation. (*See id.*). Mere conclusory statements, lacking in any supporting facts, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. The Court, therefore, does not consider this generalized allegation in analyzing whether Plaintiff pleads a constitutional violation in either Count I or Count II.

[6] Again, the Court interprets paragraph 19 of the SAC as alleging that Slimak *stared* at Plaintiff. (*See* SAC ¶ 19). Even if Plaintiff intended the phrase "started at" to be slang for "yelled at," this interpretation would still fail to show a constitutional violation. *See Oliver v. Calderon*, No. 17-cv-1792, 2019 WL 1254844, at *4 (M.D. Fla. Mar. 19, 2019) (quoting *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008)).

a more general claim of unlawful seizure. *Torres v. Miami-Dade Cnty.*, 734 F. App'x 688, 691 (11th Cir. 2018) (alteration added; citation omitted); *see also Jenkins v. Davis*, No. 11-cv-307, 2011 WL 4550168, at *1 n.1 (M.D. Ala. Sept. 2, 2011) (liberally construing a *pro se* plaintiff's filing in a similar manner), *report and recommendation adopted*, 2011 WL 4550161 (M.D. Ala. Oct. 3, 2011).[7]

Defendants do not contest that Slimak's actions, as alleged in the SAC, constituted a seizure. (*See* Mot. 6; *see also* SAC ¶¶ 16–17). Rather, Defendants' *only* argument that Plaintiff fails to state a constitutional violation in Count I sufficient to overcome Slimak's qualified immunity defense is that Plaintiff does not allege the seizure was "extended" or "unreasonably long." (Mot. 6). Yet, Plaintiff brings this claim because Slimak allegedly detained him without probable cause or reasonable suspicion. (*See* SAC ¶¶ 16–17, 25–26). It is well-settled that even a *temporary* investigatory stop and detention without reasonable suspicion or probable cause violates the Fourth Amendment. *See Jeancharles v. Augustus*, No. 13-60723-Civ, 2014 WL 4824371, at *4 (S.D. Fla. Sept. 26, 2014) ("The law is clearly established that, in the absence of reasonable suspicion . . . a police officer who detains a person to determine his identity violates the person's Fourth Amendment right to be free from unlawful seizures." (alteration added; citation omitted)).

The SAC describes the following events leading up to Slimak handcuffing Plaintiff: (1) Slimak approached Plaintiff without reason as Plaintiff left the store, asking for his identification; (2) Plaintiff refused to provide identification until Slimak stated the reason for stopping him, and;

---

[7] Plaintiff claims that Slimak violated the Fourth *and* Fourteenth Amendments of the U.S. Constitution by detaining him without reasonable suspicion or probable cause. (*See* SAC 4). Yet Plaintiff's allegations — that Slimak detained him without probable cause or reasonable suspicion — do not state a cognizable violation of the Fourteenth Amendment. *See Martin v. City of Tampa*, No. 07-cv-136, 2007 WL 1231837, at *4 (M.D. Fla. Apr. 26, 2007) (holding the same). The Court therefore limits its analysis to the Fourth Amendment.

(3) Slimak placed Plaintiff in handcuffs and did not allow him to leave for an unstated amount of time. (*See* SAC ¶¶ 16–17). None of these allegations, accepted as true, supports the conclusion that Slimak arguably possessed reasonable suspicion for even temporarily detaining Plaintiff. Plaintiff therefore sufficiently alleges a constitutional violation, even without stating the length of his detention.

Next, to overcome Slimak's qualified immunity defense, the Court must analyze whether the constitutional right was clearly established at the time of the incident. *De Veloz*, 756 F. App'x at 876 (citation and quotation marks omitted). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (citations omitted). Undoubtedly, at the time of the December 31, 2021 incident, it was clearly established that an officer violates the Fourth Amendment by seizing an individual without reasonable suspicion or probable cause solely to obtain the individual's identification. *See, e.g.*, *Jeancharles*, 2014 WL 4824371, at *4. And Plaintiff repeatedly cites to and quotes from the Fourth Amendment, securing that right. (*See* SAC ¶¶ 25–26). Therefore, the alleged constitutional violation was well-established at the time of the incident.

While Slimak may claim he possessed reasonable suspicion to detain Plaintiff, the Court must — at the motion to dismiss stage — accept "the factual allegations in the complaint as true and [draw] all reasonable inferences in the plaintiff's favor." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (alteration added; citation omitted). In this instance, Plaintiff's allegations suffice to state a violation of a well-established constitutional right.

### B. Count II: Unnecessary/Excessive Use of Force under 42 U.S.C. Section 1983 (Against Slimak)

Plaintiff next brings a claim in Count II against Slimak for unnecessary or excessive force under section 1983. Here, Defendants are correct that Plaintiff fails to state a constitutional violation, and Slimak is protected by qualified immunity. (*See* Mot. 3–9).

As in Count I, the Court focuses on the December 31, 2021 incident — the only incident in which Slimak physically interacted with Plaintiff. (*See generally* SAC). Plaintiff alleges Slimak's use of unnecessary or excessive force occurred in the course of his work as a police officer. (*See id.* ¶ 52). Therefore, to overcome Slimak's argument that he is protected against the excessive-force claim by qualified immunity, Plaintiff must articulate that Slimak violated a well-established constitutional right in applying unnecessary or excessive force against him. *See De Veloz*, 756 F. App'x at 876.

Courts use three factors to assess whether force was excessive: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Richmond v. Badia*, 47 F.4th 1172, 1182 (11th Cir. 2022) (citation omitted). Courts also consider "the justification for the application of force, the relationship between the justification and the amount of force used, and the extent of any injury inflicted." *Id.* (citation omitted).

In this instance, Plaintiff fails to state *any* facts indicating that Slimak used excessive force against him outside of baldly alleging that Slimak "forcefully detained" him on December 31, 2021. (SAC ¶ 16). Plaintiff does not allege how Slimak asserted force, where on his person Slimak asserted force, or the severity with which Slimak applied force. (*See generally id.*). While the Court must take all factual allegations in the SAC as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks

omitted; citing *Twombly*, 550 U.S. 556 (2007)).[8]  Importantly, Plaintiff's sparse allegations leave the Court unable to evaluate whether a reasonable officer at the scene would have believed the level of force necessary in the situation.  *See Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014) (articulating the standard for establishing a constitutional violation grounded in excessive use of force (citations omitted)).  Consequently, Count II against Slimak is dismissed.

### C. Count III: Intentional Infliction of Emotional Distress (Against Slimak)

Plaintiff asserts a final claim against Slimak for IIED.[9]  Defendants argue that Plaintiff fails to state facts in his SAC that, when accepted as true, show the elements of an IIED claim, (*see* Mot. 11–12); and Plaintiff fails to allege facts to overcome Slimak's protection from state tort suits under Section 768.28(9)(a), Florida Statutes (*see* Mot. 9–11).  Defendants are correct; Plaintiff's factually bare IIED claim must be dismissed.

Under Florida law, the elements of an IIED claim are:

(1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have know that emotional distress would likely result;

(2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;

(3) the conduct caused emotional distress; and

(4) the emotional distress was severe.

---

[8] The Court notes that even supposing Plaintiff had attempted to assert a separate excessive force claim on the ground that *any* use of force in effectuating a seizure without probable cause is a constitutional violation, such a claim would be subsumed into the unlawful arrest/false imprisonment claim.  *See Richmond*, 47 F.4th at 1180–81 (distinguishing *artificial* excessive force claims — arising from *any* use of force during an arrest lacking probable cause — from *genuine* excessive force claims, and noting the former are subsumed by false arrest claims arising out of the same incident).

[9] Plaintiff does not explain whether he attempts to bring the claim under section 1983 or state law.  (*See* SAC 6).  In any event, IIED claims are not viable under section 1983.  *See Rubin v. City of Miami Beach*, No. 19-20520-Civ, 2019 WL 11470833, at *4 (S.D. Fla. Feb. 12, 2019) (citations omitted).  The Court understands Plaintiff to be bringing this claim under Florida state law.  *See Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (requiring courts to liberally construe *pro se* pleadings (citation omitted)).

*Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 954–55 (Fla. 3d DCA 2017) (citation omitted).

Plaintiff does not allege facts allowing the Court to evaluate Slimak's intentionality or recklessness. (*See* SAC ¶¶ 13–22). Plaintiff also makes no attempt to allege facts speaking to the "outrageous" nature of Slimak's alleged conduct. (*See generally id.*); *cf. Kantrow v. Celebrity Cruises, Inc.*, 510 F. Supp. 3d 1311, 1324 (S.D. Fla. 2020) (collecting cases holding that even a showing of malice or aggravation may fall short of the outrageous conduct required for a successful Florida IIED claim). Plaintiff further fails to allege facts outside of bare legal conclusions that speak to the severity of his own distress. (*See generally id.*).

Further still, even if Plaintiff articulated facts sufficient to state a viable IIED claim, Slimak would be immune to that claim under Section 768.28(9)(a), Florida Statutes. *See id*. Section 768.28(9)(a) prevents government officials from being named as party defendants or being personally liable in any action stemming from injuries "suffered as a result of any act. . . in the [official's] scope of . . . employment" unless the official "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* (alterations added). Plaintiff makes no attempt to state facts showing bad faith, malicious purpose, or wanton and willful behavior. (*See generally* SAC).

### D. Counts IV and VI: Violation of Federal Civil Rights and *Respondeat Superior* (Against Miami-Dade County)[10]

Defendants argue that the two claims against Miami-Dade County should be dismissed because Plaintiff fails to present any facts that, if taken as true, would establish the County's liability for Slimak's alleged actions. (*See* Mot. 13–16). The Court agrees.

Plaintiff sues for violations of his rights based upon *Slimak*'s actions. (*See* SAC ¶¶ 12–23). As Defendants correctly note, a municipality may be liable for its employees' actions only if a plaintiff suffered injury because of an official policy of the municipality. (*See* Mot. 13 (citing *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978); quotation marks and additional citations omitted))); *see also Brown v. City of Hialeah*, 30 F.3d 1433, 1438 (11th Cir. 1994) ("A plaintiff seeking to impose liability on a municipality for injuries its employees or agents have inflicted must show that the plaintiff suffered injuries inflicted pursuant to an official government policy or custom." (citation omitted)). Additionally, to allege an official policy, a plaintiff must plead "either [] an officially promulgated county policy or [] an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (alterations added; citations omitted).

Because Plaintiff does not point to an officially circulated Miami-Dade County policy, he would need to plead the existence of *repeated* acts by a Miami-Dade County policymaker to establish an unofficial policy or custom. *See id.* Yet, while Plaintiff uses the words "custom" and "policy" throughout the SAC (*see* SAC ¶¶ 43–45, 46–48), the only real act he alleges by the County is a singular act of omission: that the County "took no action or conducted [no] investigation" into Plaintiff's single complaint against Slimak (*id.* ¶ 23 (alteration added)). Of course, a singular instance does not a custom or policy make. *See Depew v. City of St. Marys*, 787 F.2d 1496, 1499

---

[10] In the SAC, Plaintiff labels his fifth-listed claim as "Count VI". (*See* SAC ¶¶ 51–56).

(11th Cir. 1986) (explaining that "random acts or isolated incidents[,]" standing alone, are insufficient to establish a custom or policy (alteration added; citation omitted)).

Outside of this singular instance, Plaintiff cites no other action or omission by Miami-Dade County that would create a "widespread practice . . . so permanent and well settled as to . . . [have] the force of law." *Wade v. City of Miami Beach*, 565 F. Supp. 3d 1248, 1251 (S.D. Fla. 2021) (alteration adopted; alteration added; quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (additional citation omitted)). Therefore, Plaintiff fails to state a policy or custom, and Plaintiff's claim against Miami-Dade County in Count IV fails.

Plaintiff attempts to plead in Count VI that Miami-Dade County is vicariously liable for Slimak's actions simply because Slimak was acting in the scope of his employment during the alleged incidents. (*See* SAC ¶¶ 51–56). This, too, fails. Again, Defendants are correct that "a municipality cannot be held liable under [section] 1983 on a *respondeat superior* theory." (Mot. 13 (alteration added; quoting *Monell*, 436 U.S. at 691; additional citations omitted)); *see also Misquith v. Palm Beach Cnty. Health Care Dist.*, No. 20-cv-81123, 2021 WL 8055475, at *9 (S.D. Fla. Sept. 29, 2021) ("A municipal entity cannot be found liable on a *respondeat superior* theory." (citation omitted)), *report and recommendation adopted sub nom. Misquith v. Borrego*, 2022 WL 782545 (S.D. Fla. Mar. 15, 2022), *aff'd*, No. 22-11194, 2023 WL 2156635 (11th Cir. Feb. 22, 2023). In other words, Plaintiff's claim that the government is responsible for the alleged injurious actions of its employee merely because it employed him is not sufficient for liability to attach.

13

CASE NO. 24-22990-CIV-ALTONAGA/Reid

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants, Mark H. Slimak and Miami-Dade County's Joint Motion to Dismiss Second Amended Complaint **[ECF No. 43]** is **GRANTED** in part and **DENIED** in part. Counts II–VI are **DISMISSED**. Miami-Dade County is dismissed from the action. Count I against Slimak remains.

2. The remaining parties are directed to prepare and file a joint scheduling report, as required by Local Rule 16.1, by **February 10, 2025**.

**DONE AND ORDERED** in Miami, Florida, this 29th day of January, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record
       Plaintiff, *pro se*